# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMELDA MACIEL,<br><br>                Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>                Defendant. | 1:05cv0432 AWI DLB<br><br>FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Imedla Maciel ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her applications for disability insurance and SSI benefits on August 2, 2002. AR 102d-102g, 377-379. She alleged disability since October 10, 1999, due to low back pain. AR 133, 377. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 86-90, 93-97, 98. On February 24, 2004, ALJ Bert Hoffman held a hearing. AR 31-52. ALJ Hoffman denied benefits on April 15, 2004. AR 15-24. On January 25, 2005, the Appeals Council denied review. AR 7-10.

Plaintiff filed previous applications for disability insurance benefits and SSI, which were denied initially and on a reconsideration determination dated January 18, 2002. AR 75-78, 81-85, 102-102c. Plaintiff did not appeal the reconsideration decision.

Hearing Testimony

ALJ Hoffman held a hearing on February 24, 2004, in Fresno, California. Plaintiff appeared with her attorney, Gina Fazio. An interpreter assisted Plaintiff during the hearing.

Plaintiff testified that she understands some English, but doesn't speak any. AR 35. She rents a room and lives with her 19 year old daughter. AR 34-35.

She last worked in 1999 and stopped because she could no longer do her regular job due to restrictions in bending, sitting, standing, and lifting imposed by her doctor. AR 36. Her doctor precluded heavy lifting and repeated bending and stooping. AR 36. When she sits, she has pain in her lower back and thought she could sit for an hour. AR 37. She also has pain in her feet and legs and thought she could stand for about 30 minutes. AR 37.

She does not help with the housework, but does her own chores, cooking, and laundry. AR 37. She has a driver's license and drove to the hearing. AR 38. She leaves the house during the day to go to the doctor. AR 39.

When questioned by her attorney, Plaintiff explained that she cooks, does laundry and goes to the doctor during the day. AR 40. She watches television once in a while and goes to

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  church on Saturdays and Sundays.  AR 40-41.  She also hosts a bible study at her house on
2  Fridays.  AR 41.
3         Although she used to walk at least 20 minutes a day, she no longer does so.  AR 43.  Her
4  daughter usually goes with her to the grocery store, but she sometimes goes to the store, the
5  doctor and church by herself.  AR 45.  She lays down everyday for about two hours.  AR 47.  She
6  takes medication and has no side effects.  Plaintiff testified that she was four feet, eight inches
7  tall, and weighed 200 pounds.  AR 48.
8         Plaintiff received $12,000 as part of a workers' compensation settlement.  AR 48.  She set
9  up a business selling clothes at swap meets three days a week.  AR 48-49.  She stopped about a
10 year and a half ago, when her van broke down and she didn't have money to fix it.  AR 49.  She
11 made $300 to $500 per day, and did this for six to seven months.  Her son helped her load the
12 van with clothes and stayed with her at the swap meet, generally from 7:00 a.m. to 2:00 p.m.  AR
13 49-50.
14         <u>Medical Evidence</u>
15         Plaintiff injured her back at work in October 1998, while lifting a pallet at a canning
16 company.  AR 163.  She had an exacerbation of symptoms, including increased back pain and
17 left leg pain, in early 2000.  AR 162.  Frank Fine, D.C., M.D., examined Plaintiff and diagnosed
18 lumbar radioculopathy and ongoing myofascial dysfunction of the lumbar paraspinal
19 musculature.  Dr. Fink continued her medication regime but indicated that her back remained
20 constantly sore.  AR 162.  Plaintiff also underwent chiropractic care and lumbar epidural steroid
21 injections.  AR 203, 305-306.
22         A February 1999, MRI revealed degenerative disc disease at L-4,5 and L-5, S-1.  AR 298.
23         Plaintiff was gradually weaned from medical care in 2000 to the point where she visited
24 her chiropractor, John Hill, D.C., twice a month.  AR 305.
25         On November 29, 2000, Plaintiff was seen by Leland H. Johnson, M.D.  He diagnosed
26 degenerative disc disease, lumbar area, and mild radiculitis right and left.  Dr. Johnson opined
27 that Plaintiff could not perform heavy lifting and did not feel further treatment was indicated.
28 AR 302.

On February 26, 2001, Plaintiff saw Allen Kaisler-Meza, M.D., for a qualified medical exam ("QME"). He diagnosed degenerative disc disease with superimposed lumbar spondylosis and right L4 radiculopathy with industrial aggravation and chronic mechanical low back pain secondary to degenerative disc disease. AR 308. Dr. Kaisler-Meza opined that Plaintiff had a disability that precludes heavy lifting and repeated bending and stooping. AR 308.

On July 25, 2001, Plaintiff saw Christopher F. Amsden, M.D., a specialist in physical and pain medicine. After an examination, he opined that Plaintiff's symptoms were consistent with lumbar mechanical pain and recommended medications and weight loss. He indicated that Plaintiff should consider home exercises or, if she did not improve, aquatic physical therapy. AR 314,320.

Plaintiff saw treating physician Ramon Mendoza, M.D., on November 27, 2001, and complained of low back pain with pain in her upper right and left thighs. He diagnosed lumbalgia and sacral iliac sprain/strain. Plaintiff was instructed to continue with her chiropractic treatment and pain medications. Dr. Mendoza indicated that Plaintiff was temporarily totally disabled. AR 254-255.

On December 27, 2001, Plaintiff saw consultive examiner Lakshmi Needa Madireddi, M.D.. He observed no abnormalities in her cervical spine or extremities, i.e., there was full range of motion, normal muscle strength, intact sensation and no atrophy. There was "some" tenderness in Plaintiff's lower right lumbar spine. Lumbar range of motion was poorly performed because of Plaintiff's concern of increasing pain. After examination, Dr. Madireddi diagnosed chronic lumbar pain and a reported history of lumbar disc disease. Dr. Madireddi opined that Plaintiff's subjective complaints seemed to outweigh the objective findings and thought Plaintiff could stand, walk, and sit for a full six hour workday. She should avoid repetitive, but not occasional, stooping, crouching, and crawling activities. She could lift and carry up to 25 pounds occasionally and 10 pounds frequently. AR 226-227.

On January 17, 2002, a State Agency physician completed a Physical Residual Capacity Assessment form and opined that Plaintiff could lift 25 pounds occasionally, 10 pounds frequently, stand and/or walk for about 6 hours in an eight hour workday, and sit for about six

hours in an eight hour workday. AR 228-229. She could occasionally stoop, crouch and crawl. AR 230.

On May 2, 2002, Plaintiff saw Dr. Mendoza. She indicated that the trigger point injections did not help and that she continued to have low back pain. AR 326.

Plaintiff saw Dr. Mendoza on July 11, 2002. Plaintiff indicated that her low back pain had improved but her radicular pain was the same. He indicated that Plaintiff had to avoid repetitive bending or stooping and heavy lifting for one month. AR 252.

Plaintiff saw consultive examiner Navdeep Dhaliwal, M.D., on October 26, 2002, and complained of low back pain. Range of motion in her lumbar region was restricted because of pain, and she complained of pain in her low back on raising either leg. Dr. Dhaliwal indicated that Plaintiff had "excessive symptoms that were exaggerated compared to her symptoms on palpating her lumbar spine. She was complaining of pain on even slight touching of the lumbar spine." He diagnosed low back pain with some radicular symptoms, possibly degenerative arthritis or possible lumbar disc disease. He further indicated that it was difficult to assess her because he did not "know how much is true or if she has back pain and how much she is exaggerating her symptoms." Based on her examination, Dr. Dhaliwal found no limitations. AR 242-245.

On September 10, 2002, Plaintiff was examined by W. Bradford McWilliams, D.C. A Kemp's test was positive for low back pain and Plaintiff had abnormal joint movement with pain at L4-5 bilaterally. AR 375.

In November 2002, Dr. Hill examined Plaintiff and indicated that her work status was "per QME." AR 251.

On December 2, 2002, Plaintiff was examined by Stephen Mlawsky, M.D. Plaintiff complained that she was debilitated with back pain, with radicular components, resulting from her October 1998 occupational injury. Upon examination, Plaintiff had point tenderness at both SI joints and paraspinal muscle spasms with forward flexion beyond 20 degrees. Bending and twisting at the waist were normal and there were no lower extremity findings. Dr. Mlawsky

5

assessed lumbar radiculitis, previously established, with a sacroiliac chronic pain syndrome. He prescribed medication. AR 249-250.

On March 12, 2003, State Agency physician Antoine Dipsia, M.D., completed a Physical Residual Capacity Assessment form and opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about 6 hours in and eight hour workday, and sit for about six hours in an eight hour workday. AR 257. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. AR 258. Dr. Dipsia indicated that Plaintiff's condition has become more severe since October 2002 as she now has paraspinal muscle spasms and positive "RLE SLR" findings. Nonetheless, Plaintiff should be able to perform light work activities with occasional postural limitations. AR 262.

On April 6, 2003, Plaintiff underwent a consultive psychiatric evaluation by Jen Wang, M.D. Plaintiff complained of back pain and indicated that she had some hopelessness and suicidal ideations because she could not work. Mental status examination revealed that her mood was low and her affect mildly restricted. Dr. Wang diagnosed depressive disorder, not otherwise specified, but indicated that she did not show any major mental illness. Plaintiff would benefit from anti-depressant medications and her condition would improve within 12 months. Plaintiff could perform simple, repetitive tasks, could accept instructions from supervisors, interact with coworkers and the public, perform work activities on a consistent basis and maintain regular attendance. Dr. Wang noted that while her back pain may be a factor in making her disabled, her mental condition was not a factor. AR 267-269.

On April 23, 2003, a State Agency physician completed a Psychiatric Review Technique Form and opined that Plaintiff had mild difficulties maintaining social functioning and maintaining concentration, persistence or pace. AR 280.

In April and May 2003, Plaintiff was examined by Randolph Rosarion, M.D., a specialist in physical medicine and rehabilitation. In April, she had increased muscle spasm at the thoracolumbar paraspinal muscles throughout. Range of motion was limited in all planes at the low back. She was unable to perform right heel walk and had decreased right toe walk. Her gait was slow. He prescribed medications. AR 336-338.

Plaintiff was examined by Alan Millman, M.D., a neurologist, on July 22, 2003.  She complained of constant lumbosacral pain and a sharp pain in the soles of her feet.  She had paraspinal tenderness over the lumbosacral area spine and limitations over all planes of motion of the lumbar spine.  Her sensory examination was inconsistent.  He diagnosed lumbosacral sprain/strain injury with lumbosacral radiculopathy and bilateral foot pain.  AR 350.

Plaintiff saw Dr. Hill on August 19, 2003.  She complained of gradually increasing pain in her back and feet, despite medication.  Her sacral iliac joints were profoundly edematous with exquisite allodynia upon palpation.  Her lumbar range of motion was painful and mildly restricted.  Her work status remained as per her QME.  AR 372.

On November 11, 2003, Plaintiff was examined by Daryl Fisher, M.D.  She complained of recurrent low back pain, radicular in nature, but indicated that her treatment and medications have been quite helpful in managing her pain.  Her examination was limited due to recent pelvic surgery.  He diagnosed lumbosacral degenerative disc disease with history of lumbosacral radiculopathy.  AR 347.

Plaintiff saw Dr. Fisher on December 30, 2003, and reported that she was not currently in physical therapy, but had found prior physical therapy beneficial.  AR 341.  He added medications and submitted a request for physical therapy.  AR 342.

On January 27, 2004, Plaintiff saw Dr. Fisher.  Her gait was slow secondary to low back discomfort, she was uncomfortable in the sitting position, and had difficulty moving to the supine position.  She had moderate bilateral paraspinal tenderness at L4-L5 with underlying edema.  Her work status was per the QME.  AR 339.

Dr. Hill filled out a questionnaire on February 4, 2004.  He indicated that Plaintiff was precluded from performing any full time work.  Plaintiff could not lift over five pounds, could not sit over one hour without a one hour break, could occasionally stoop, lift, twist, push, pull, and could not stand over one hour without a one hour break.  Over an eight hour period, she could sit for four hours total and stand/walk for 2.5 hours total.  Plaintiff needed to lie down once during an eight hour day for two hours.  AR 371.

On February 17, 2004, Dr. Fisher completed a questionnaire in which he opined that Plaintiff was precluded from performing any full time work. His limitations mirrored those of Dr. Hill. AR 376.

ALJ's Findings

After reviewing the medical evidence, the ALJ determined that Plaintiff had the severe impairment of lumbosacral degenerative disc disease. He found Plaintiff's statements regarding her impairments and their impact on her ability to work not credible. AR 21. Plaintiff retained the residual functional capacity ("RFC") to perform work with no heavy lifting or repeated bending or stooping. AR 22. Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a cannery worker. AR 22. Even if Plaintiff could not perform her past relevant work, she retained the RFC to perform substantially all of the full range of light work. AR 23. Pursuant to the Medical-Vocational Guidelines ("Grids"), Plaintiff was not disabled. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

8

substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**<u>REVIEW</u>**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (lumbosacral degenerative disc disease) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past relevant work as a cannery worker; and (5) assuming she cannot perform her past relevant work, retains the RFC to perform substantially all of the full range of light work.  AR 23.

Plaintiff contends that the ALJ (1) failed to properly review the medical evidence; (2) failed to properly review Plaintiff's testimony; (3) failed to correctly review and credit the treating physician evidence; (4) failed to properly review and develop the issues related to Plaintiff's past relevant work; and (5) failed to properly consider the mental health record.

**DISCUSSION**

A.  Review of Testimony

Plaintiff contends that the ALJ failed to give support for his RFC finding aside from the QME.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

Here, the ALJ found that Plaintiff retained the RFC to perform work with no heavy lifting or repeated bending or stooping.  AR 22.  In so finding, he explained, "throughout the claimant's treatment, her treating doctors have placed her work status as being 'per QME.'"  AR 21.  The ALJ determined that these restrictions (no heavy lifting and no repetitive bending or stooping) were supported by the overall evidence of record, including imaging evidence showing lumbosacral degenerative disc disease.  AR 21.

The ALJ correctly noted that many of Plaintiff's treating and examining physicians indicated that Plaintiff's limitations consisted of avoiding heavy lifting and repeated stooping and bending.  In November 2000, Dr. Johnson examined Plaintiff and indicated that she could not perform heavy lifting.  AR 302.  In February 2001, Dr. Kaisler-Meza performed Plaintiff's QME and opined that she had a disability that precluded heavy lifting and repeated bending and stooping.  AR 308.  In December 2001, Dr. Madireddi examined Plaintiff and believed that she could stand, walk, and sit for a full six hour workday, but had to avoid repetitive, but not occasional, stooping, crouching, and crawling activities.  He opined that Plaintiff could lift and carry up to 25 pounds occasionally and 10 pounds frequently.  AR 226-227.  In July 2002, Dr.

Mendoza opined that Plaintiff had to avoid repetitive bending or stooping and heavy lifting for one month. AR 252. In November 2002 and August 2003, Dr. Hill noted that Plaintiff's work status was "per QME." AR 251, 372. Similarly, Dr. Fisher found Plaintiff's work status to be "per QME" in January 2004. AR 339.

Certainly, this is sufficient evidence in support of the ALJ's finding. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In fact, more than one doctor questioned Plaintiff's credibility and Dr. Dhaliwal did not impose any limitations. AR 226-227, 242-245. Given this evidence, the ALJ may have given Plaintiff the benefit of the doubt in finding the above restrictions. Moreover, two State Agency physicians concurred with the ALJ's RFC finding. AR 230, 257. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(i), 416.913(c), 416.927(f)(2)(i).

Plaintiff argues that the ALJ ignored "most of the evidence establishing the RFC." Brief, at 6. She points to an MRI that revealed severe L5-S1 disc disease, and argues that the condition caused multiple signs and symptoms. According to Plaintiff, this evidence is consistent with disability. While these objective findings, including decreased reflexes, decreased motion, etc., are supported by the record, they do not necessarily translate into a disability. In fact, a majority of the physicians who found Plaintiff capable of working with restrictions in lifting, bending and stooping, made note of these objective symptoms.

Insofar as Plaintiff contends that the ALJ failed to properly consider the Listings, her argument fails. She contends that the Listings in Section 1.00 were not reviewed, despite the ALJ's statement to the contrary. She explains that had the Listings been reviewed, Plaintiff would have been found to be disabled. First and foremost, as Plaintiff concedes, the ALJ specifically states, "Listed impairments related to the musculoskeletal system at Section 1.00 have been considered." AR 21. Plaintiff's conclusory and unsupported allegation that the Listings could not have been considered because if they had been, Plaintiff would have been found disabled, is wholly insufficient to negate the ALJ's statement. Second, two State Agency physicians reviewed Plaintiff's impairments in the context of Listing equivalency. AR 228-235, 253-263. The signature of a State Agency physician ensures that he considered whether an impairment meets or equals a Listing. SSR 96-6p. AR 67, 235, 263. Finally, while Plaintiff has

an impairment that imposes limitations, there is no evidence that her impairment is severe enough to meet or equal a listing. 20 C.F.R. § 416.920(d). Indeed, Plaintiff attaches Listing 1.04 to her brief, which requires evidence of nerve root compression with motor loss, spinal arachnoiditis, or lumbar spinal stenosis with pseudoclaudication. There is no such evidence in the record.

In a related argument, Plaintiff faults the ALJ for failing to properly consider her lack of education. She explains that she was illiterate and required an interpreter, yet the ALJ "inexplicably" found that she had a marginal education. Brief, at 7. The ALJ applied Rule 202.17 to find Plaintiff not disabled. However, as Defendant points out, regardless of whether Plaintiff was classified as having a marginal education or completely unable to communicate in English, the Grids would have directed a finding of not disabled. *See* Rules 202.16, 202.17, 202.18.

B.    Plaintiff's Testimony

Next, Plaintiff argues that the ALJ failed to give adequate reasons for rejecting Plaintiff's testimony.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect

of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In finding Plaintiff not credible, the ALJ first explained that the alleged severity of the impairments was not corroborated by Plaintiff's treatment records and the reports of the consultive examiners. AR 21. Indeed, a majority of Plaintiff's records indicate that she could perform work with no heavy lifting or repetitive stooping or bending. The ALJ next noted that both consultive examiners found inconsistencies and exaggeration of symptoms. AR 21, 226-228, 242-245. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). The ALJ also explained that Plaintiff was able to run her business during the period when she was allegedly disabled and only stopped the business because her van broke down. AR 21-22. *Gregory v. Brown*, 844 F.2d 664, 667 (9th Cir. 1988). The ALJ examined Plaintiff's daily activities, which included cooking, light cleaning, laundry, running errands and attending church. AR 21; *Thomas,* 278 F.3d at 958.

Plaintiff argues that the ALJ failed to consider her work history, which, according to Plaintiff, should have enhanced her credibility. The ALJ is not required, however, to discuss all possible factors that could be relevant to a disability determination. *Cunha v. Barnhart*, 2003 WL 21033408 (N.D. Cal. 2003). In any event, although Plaintiff worked in a cannery for many years prior to her date of onset, she continued to work at her own business *during* the period she alleges she was disabled. Her work history, then, is not entirely supportive of her credibility. Although Plaintiff argues that she was unable to handle the business for medical reasons, she testified that she stopped the business because her van broke down and she was unable to fix it. AR 49. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).

The ALJ made sufficient findings to allow the Court to conclude that he did not arbitrarily discredit Plaintiff's testimony. *Thomas,* 278 F.3d at 958.

C. <u>Treating Physician Evidence</u>

Plaintiff argues that the ALJ did not provide proper reasons to reject the opinions of Dr. Fisher and Dr. Hill.

1   It is true that the medical opinion of a claimant's treating physician is entitled to "special
2 weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d
3 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only
4 on the fact that he is employed to cure but also on his greater opportunity to observe and know
5 the patient as an individual.  However, a treating physician's opinion is not conclusive as to a
6 physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v.*
7 *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating
8 physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the
9 rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A statement by a physician
10 indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of
11 medical findings and other evidence. 20 C.F.R. 416.927(e).  "Conclusory opinions by medical
12 experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v.*
13 *Heckler*, 779 F.2d 528 (9th Cir. 1985).

14   Here, the ALJ gave the RFC assessments by Dr. Hill and Dr. Fisher little weight because
15 they were inconsistent with their previous treatment notes that stated Plaintiff could work with
16 restrictions as "per QME."  AR 21, 339, 372.  The QME indicated that Plaintiff could work, but
17 could not perform heavy lifting or repetitive bending or stooping.  The inconsistency between the
18 doctors' treatment notes and their opinion that Plaintiff could not perform any work is a proper
19 reason for rejecting their opinion. *Connett v. Barnhart*, 340 F.3d 871, 874-875 (9th Cir. 2003).
20 He also explained that the assessments, which indicated Plaintiff was unable to perform any work
21 activity, were inconsistent with the overall evidence of record.  A lack of supporting clinical
22 findings is a legitimate reason to reject a treating physician's opinion. *Magallenes v. Bowen*, 881
23 F.2d 747, 751 (9th Cir. 1989).

24   Plaintiff argues that the ALJ was wrong in rejecting the treating physicians' opinions in
25 favor of the QME opinion.  Although the ALJ set forth the results of the QME performed by Dr.
26 Kaisler-Meza, he did not reject the limiting RFC assessment of Dr. Hill and Dr. Fisher in favor of
27 Dr. Kaisler-Meza's opinion.  Rather, the ALJ rejected their opinions because of their inherent
28 inconsistencies.  Prior to filling out the questionnaire in which Dr. Hill and Dr. Fisher first

assessed the limited RFC, they both examined Plaintiff and repeatedly determined that her work status was "per QME." AR 339, 342, 346, 372, 373, 374. There is nothing in the treatment notes that would support such a drastic change of opinion. Moreover, an opinion set forth in a brief and conclusionary form opinion that lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes,* 881 F.2d at 751.

D.    Past Relevant Work

Plaintiff argues that the ALJ did not properly develop and assess Plaintiff's past relevant work ("PRW") and requests remand for the ALJ to reconsider PRW with the assistance of a vocational expert.

Plaintiff's argument is meritless. The ALJ explained that his RFC finding would allow Plaintiff to perform her PRW as a cannery worker. AR 22. The ALJ continued, however, that looking at the evidence in the light most favorable to Plaintiff, the evidence must be viewed in conjunction with the Grids. AR 22. Giving Plaintiff the benefit of the doubt, he then proceeded to step five and found Plaintiff not disabled pursuant to Rule 202.17. AR 22. The ALJ therefore did not find Plaintiff not disabled based on her ability to perform her PRW.

E.    Mental Health Record

Finally, Plaintiff argues that the ALJ failed to properly review the mental health record. Specifically, she contends that the ALJ should have found her depression to be a severe impairment. Instead, she argues that the ALJ "played doctor" and found her depression to be nonsevere.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if her impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c).

Here, the ALJ found that Plaintiff has the mental and physical capacity for basic work activities. As support, he cited the opinion of consultive psychiatrist Dr. Wang. AR 267-269. Dr. Wang determined that although Plaintiff had depressive disorder, not otherwise specified, she

would benefit from anti-depressant medication and her condition would improve within 12 months. AR 269. Dr. Wang further opined that Plaintiff could perform simple and repetitive tasks. AR 269. She may have difficulty with detailed or complex tasks, but this was due to her poor education, not her depression. AR 269. Based on this report, a State Agency physician found that Plaintiff had a nonsevere affective disorder. AR 270.

Contrary to Plaintiff's suggestion, the ALJ did not play doctor. Instead, he based his finding on the opinion of Dr. Wang. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence).

Insofar as Plaintiff contends that the ALJ should have developed the mental health record, her argument fails. The duty to develop the record arises only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Id.* at 1150. Here, the evidence was neither ambiguous nor inadequate.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Imelda Maciel.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   January 31, 2006             /s/ Dennis L. Beck
3b142a                                UNITED STATES MAGISTRATE JUDGE